IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LEROY WILLIS,                          *

    Plaintiff,                    *

vs.                                    *

                          CASE NO. 4:18-CV-162 (CDL)

SECRETARY, DEPARTMENT OF               *
DEFENSE,
                                *

    Defendant.                    *
_____        *

O R D E R

Leroy Willis was an employee at the commissary at Fort Benning, Georgia. He claims that he was discriminated against because of his race ("Black"), color ("Dark Skin"), gender ("Male"), religion ("Christian"), age (56 at the time of the alleged discrimination), and in retaliation for complaining of unlawful employment discrimination. Compl. §§ I.C & I.D., ECF No. 1. The Government filed a motion for judgment on the pleadings or, in the alternative, motion for summary judgment. Because the Government relies on matters outside the pleadings in support of its motion, the Court construes it as a motion for summary judgment. That motion (ECF No. 12) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

In accordance with the Court's local rules, the Government submitted a statement of undisputed material facts with its summary judgment motion. *See* M.D. Ga. R. 56 (requiring statement of material facts that is supported by the record). Willis, who is proceeding pro se, received a notice regarding the significance of the Government's summary judgment motion and of his opportunity to respond to the motion and statement of material facts. Notice to Pro Se Party of Mot. for Summ. J., ECF No. 15. Though Willis filed a response brief and one attachment, he did not respond to the Government's statement of material facts. Therefore, the Government's statement of material facts is deemed admitted pursuant to Local Rule 56. *See* M.D. Ga. R. 56 ("All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record

shall be deemed to have been admitted, unless otherwise inappropriate."). The Court reviewed the Government's citations to the record to determine if a genuine factual dispute exists. *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008). Willis did submit, as part of his brief, a statement of facts with citations to "Investigative File." The investigative file is not part of the present record, so the Court cannot verify Willis's citations to it.

FACTUAL BACKGROUND

Willis is a black man who was born in 1959. He is a Christian. In June 2014, he received a temporary appointment as a store worker at the Fort Benning commissary. His immediate supervisor was Phyllis Chenault. Willis asserts that he was discriminated against during his employment in two ways.

First, Willis claims that he was not paid for three days while he was serving on jury duty. Willis Dep. 26:13-18, 26:24-27:1, ECF No. 14. Willis was not scheduled to work at the commissary on those three days. *Id.* He asserts that a black woman named Wanda was paid for her time on jury duty. Willis Dep. 29:3-18. There is no evidence that Wanda was *not* scheduled to work at the commissary on the days when she had jury duty.

Second, Willis contends that his supervisor refused to grant him religious accommodations on Sundays. Willis knew when he was hired that he might have to work on Sundays. He asked

his supervisor if he could "come in a little later on Sunday" so that he could attend Sunday School before work. *Id.* 39:8-11. Willis was scheduled to work on Sundays beginning at 11:00 a.m. Mot. for Summ. J. Attach. 5, Time Cards, ECF No. 12-5.

Willis filed an "EEO complaint" on December 5, 2014 and told Chenault about it the same day. Compl. 5; Willis Dep. 63:6-24. According to Willis, Chenault began making negative comments about him the next day. Willis was terminated on January 16, 2015. In her termination memo, Chenault stated that Willis (1) "disturbed other employees while they were working, even after [he was] told not to do so" on December 5, 2014; (2) was unable to fill his section of the produce case in a timely manner and that another employee had to be assigned to help on December 20, 2014; and (3) failed to follow instructions when he was asked to help move pallets on December 22, 2014. Memo to L. Willis from P. Chenault (Jan. 16, 2015), ECF No. 12-3 [hereinafter "Termination Memo"]. Chenault further stated that Willis was counseled regarding his conduct and performance but did not improve. *Id.* Finally, Chenault stated that Willis's "conduct adversely affects the efficiency of [the commissary's] service and will not be tolerated. Therefore, for the efficiency of the service, your appointment is being terminated." *Id.*

Willis filed an administrative action claiming discrimination and retaliation. After an administrative law judge dismissed his complaint, Willis filed this action.

DISCUSSION

## I. **Willis's Discrimination Claims**

Willis's claims of discrimination based on race, color, gender, and religion arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. To prove these claims, Willis must establish that the Government discriminated against him in the terms and conditions of his employment because of his "race, color, religion, [or] sex" or that "race, color, religion, [or] sex . . . was a motivating factor" behind the employer's decision. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-2(m). Willis's age discrimination claim arises under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. To prove that claim, Willis must show that the Government discriminated against him in the terms and conditions of his employment "because of [his] age." 29 U.S.C. § 623(a)(1). Willis did not present evidence or even allege any facts to suggest that the Government discriminated against him because of his race, color, or age or that his race or color were motivating factors behind the Government's decisions. Therefore, the Government is entitled to summary judgment on Willis's race, color, and age discrimination claims.

Willis's sex discrimination claim is based on his assertion that he was not paid for three days that he served jury duty (when he was not scheduled to work at the commissary), but a woman named Wanda was paid for her time on jury duty. Willis may survive summary judgment by pointing to direct evidence that he was discriminated against with regard to his pay because of his sex or by pointing to circumstantial evidence that would allow a jury to infer intentional discrimination. *See Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (stating that Title VII "discrimination claims can be established with either direct or circumstantial evidence"). Willis did not point to any direct evidence that he was, because of his sex, denied pay for three days that he was not scheduled to work while he was on jury duty. He also did not point to any circumstantial evidence that would allow a jury to infer intentional discrimination, such as evidence that he and Wanda both served jury duty on days when they were not scheduled to work at the commissary and Wanda was paid for those days but Willis wasn't. Accordingly, Willis did not present evidence to survive summary judgment on his sex discrimination claim.

Willis's religious discrimination claim is based on his contention that his supervisor refused to grant him a religious accommodation on Sundays. Under Title VII, an employer "has a 'statutory obligation to make reasonable accommodation for the

religious observances of its employees, short of incurring an undue hardship.'" *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, (1977)). "To succeed on a claim based on an employer's failure to accommodate religious practices, an employee must first establish a prima facie case of religious discrimination by showing that he (1) had a bona fide religious belief that conflicted with an employment requirement, (2) informed his employer of his belief, and (3) was disciplined or discharged for failing to comply with the conflicting employment requirement." *Walker v. Indian River Transp. Co.*, 741 F. App'x 740, 746 (11th Cir. 2018) (per curiam) (citing *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1321 (11th Cir. 2007)).

Willis did not present any evidence that he holds a sincere belief that his religion requires him to attend Sunday School. *Cf. Lake v. B.F. Goodrich Co.*, 837 F.2d 449, 450 (11th Cir. 1988) (noting that employee had a sincerely held belief that his Seventh Day Adventist faith did not allow him to work on the sabbath without endangering his immortal soul). It is one thing to enjoy Sunday School, but it is another to hold a sincere belief that missing Sunday School is forbidden by religious beliefs. Even if Willis did hold a bona fide religious belief that required him to attend Sunday School, Willis did not point

to evidence of a conflict between that belief and his employment requirements. There is evidence that Willis asked to "come in a little later on Sunday" so that he could attend Sunday School before work, Willis Dep. 39:8-11, but Willis pointed to no evidence that his 11:00 a.m. Sunday shift start time conflicted with Sunday School. Finally, Willis did not point to evidence that he was ever disciplined because of his religious practices. For these reasons, the Government is entitled to summary judgment on Willis's religious discrimination claim.

## II. Willis's Retaliation Claim

In addition to his discrimination claims, Willis asserts a Title VII retaliation claim, asserting that he was terminated for complaining of unlawful discrimination. To prove this claim, Willis must establish that the Government discriminated against him "because he has opposed" discrimination made unlawful by Title VII or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C.A. § 2000e-3(a). Willis did not point to direct evidence of retaliatory discharge, so he may proceed under the "*McDonnell Douglas* burden shifting framework." *Smelter v. S. Home Care Servs*. Inc., 904 F.3d 1276, 1293 (11th Cir. 2018).

The first step in the *McDonnell Douglas* framework is for the employee to establish a prima facie case of retaliation.

The present record viewed in the light most favorable to Willis establishes that Willis filed an "EEO complaint" on December 5, 2014 and told Chenault about it the same day. Willis Dep. 63:6-24. Willis was terminated the next month, and Chenault signed his termination memo. The Court assumes for summary judgment purposes that this evidence establishes a prima facie case of retaliatory termination. So, "the burden shifts to the employer to produce evidence that its action was taken for a legitimate, nondiscriminatory reason." *Smelter*, 904 F.3d at 1293.

The Government proffered legitimate nonretaliatory reasons for Willis's termination: he disturbed other employees, was inefficient at his job and required extra help, and did not follow instructions when he was asked to move pallets. Termination Memo. Despite counseling, Willis did not improve. *Id.* And, Willis's conduct adversely affected the efficiency of the commissary's service. *Id.* To survive summary judgment, Willis must present evidence to show that the Government's "proffered reason was merely a pretext to mask discriminatory actions." *Smelter*, 904 F.3d at 1293 (quoting *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010)).

Willis can carry his burden on pretext by casting doubt on the Government's proffered nonretaliatory reasons "sufficient to allow a reasonable factfinder to determine that [they] were not what actually motivated [the Government's] conduct." *Id.* (first

alteration in original) (quoting *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001)). Willis did not point to any evidence to cast doubt on the Government's proffered reasons. He notes in his response brief that his supervisor claimed Willis was disturbing another worker, but he does not dispute that it happened.[1] Willis asserts in his response brief that he moved pallets, but he did not present any evidence to dispute that he did not follow instructions when asked to move the pallets. And, Willis did not present evidence to dispute that he needed extra help to fill his section of the produce case in a timely manner. Accordingly, Willis did not meet his burden of establishing pretext, and the Government is entitled to summary judgment on his retaliation claim.

CONCLUSION

For the reasons set forth above, the Government's motion for summary judgment (ECF NO. 12) is granted.

IT IS SO ORDERED, this 3rd day of October, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[1] The Court emphasizes that Willis's response brief is not evidence. The Court nonetheless reviewed the response and determined that it would not create a genuine fact dispute on Willis's claims even if it were reduced to admissible form.